IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-29

 No. 252A20

 Filed 19 March 2021

 IN THE MATTER OF: L.N.G., L.P.G., and L.A.D.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 2

 March 2020 by Judge John K. Greenlee in District Court, Gaston County. This matter

 was calendared for argument in the Supreme Court on 11 February 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Elizabeth Myrick Boone for petitioner-appellee Gaston County Department of
 Health and Human Services.

 Everett Gaskins Hancock LLP, by Katherine A. King, for appellee Guardian ad
 Litem.

 Garron T. Michael for respondent-appellant mother.

 MORGAN, Justice.

¶1 Respondent-mother appeals from the trial court’s order terminating her

 parental rights to her minor children L.N.G. (Nicole), L.P.G. (Peter), and L.A.D.

 (Andrew).1 After careful review, we conclude that the trial court properly adjudicated

 the existence of at least one ground for termination. Thus, we affirm the termination

 order.

 1 Pseudonyms are used to protect the identity of the juveniles and for ease of reading.
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 I. Factual Background and Procedural History

¶2 This case was initiated on 15 December 2016, upon the filing of a petition by

 the Gaston County Department of Health and Human Services (DHHS) alleging that

 Nicole, Peter, and Andrew were neglected and dependent juveniles. In the petition,

 DHHS averred that it had been working with the family for several months due to a

 series of domestic violence incidents which had occurred between respondent-mother

 and Andrew’s father, “Mr. D.” Although respondent-mother and DHHS agreed to a

 case plan on 10 November 2016 in order to allow respondent-mother to address these

 matters, she and Mr. D. subsequently engaged in an argument in front of the children

 during which Mr. D. choked respondent-mother and spit in her mouth. Thereafter,

 DHHS obtained nonsecure custody of all three children.

¶3 On 28 February 2017, the trial court entered an order adjudicating Nicole,

 Peter, and Andrew as neglected and dependent juveniles after respondent-mother

 stipulated to the allegations in the petition. Two months later, the trial court entered

 a disposition order. The order established a case plan for respondent-mother which

 required her to complete domestic violence victim counseling, to complete parenting

 classes, to complete family counseling with Mr. D., to refrain from exposing the

 children to domestic violence, to attend and participate in any assessments with

 Nicole and Peter, and to comply with all recommendations resulting from therapeutic

 services for Nicole and Peter.
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

¶4 On 12 April 2017, respondent-mother filed a motion for review, seeking to have

 the juvenile case terminated and thereupon converted to a civil custody case under

 Chapter 50 of the General Statutes of North Carolina. See N.C.G.S. § 7B-911 (2019).

 In the motion, respondent-mother alleged that she had completed her case plan, that

 a home study had determined that respondent-mother’s home was a safe and

 reasonable environment for her children, and that respondent-mother had ceased all

 communication with Mr. D. The trial court entered an order denying this motion on

 27 February 2018.

¶5 The trial court held its first Review and Permanency Planning Hearing in the

 case on 23 May 2017. Based on respondent-mother’s “significant progress” on her case

 plan, the primary permanent plan was set as reunification with a secondary

 permanent plan of guardianship. Respondent-mother was awarded ten hours of

 weekly unsupervised visitation with the children, which would increase to forty-eight

 hours weekly after the school year ended.

¶6 On 8 June 2017, DHHS filed a Motion for Review after Nicole made a report,

 following a visit which she had with respondent-mother, that Nicole believed Mr. D.

 was currently living with respondent-mother and that Mr. D. was in respondent-

 mother’s home during the visit. When a DHHS social worker investigated these

 claims, Mr. D. admitted that Nicole’s report was true. Consequently, DHHS asked

 the trial court to suspend respondent-mother’s unsupervised visitation and instead
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 to permit her to have two hours of weekly supervised visitation. At a subsequent

 motion hearing, respondent-mother denied that Mr. D. lived with her. On 19

 September 2017, the trial court allowed DHHS’s motion to change respondent-

 mother’s visitation to two supervised hours per week.

¶7 At a Review and Permanency Planning Hearing conducted on 13 November

 2018, DHHS presented additional evidence that challenged respondent-mother’s

 claim that she had ended her relationship with Mr. D. In its resulting order, the trial

 court found that respondent-mother’s neighbor had witnessed the presence of Mr. D.

 at respondent-mother’s home repeatedly over a period of several months. It further

 found that a private investigator made similar observations over a ten-day period in

 September 2018. Hence, the primary permanent plan for the juveniles was changed

 to adoption with a secondary permanent plan of guardianship/reunification.

¶8 On 30 July 2019, DHHS filed a petition to terminate respondent-mother’s

 parental rights to the juveniles alleging the grounds of neglect, willfully leaving her

 children in foster care or a placement outside the home for more than twelve months

 without making reasonable progress toward correcting the conditions that led to their

 removal, and willfully failing to pay a reasonable portion of her children’s cost of care

 for the six months preceding the filing of the petition. See N.C.G.S. § 7B-1111(a)(1)–

 (3) (2019). The petition also alleged that respondent-mother had relocated to New

 York and secured employment there.
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

¶9 The hearing on the termination of parental rights petition was conducted over

 a two-day period in January 2020. On 2 March 2020, the trial court entered an order

 terminating respondent-mother’s parental rights. The trial court found that grounds

 existed for termination pursuant to N.C.G.S. § 7B-1111(a)(1)–(2), but it dismissed the

 third ground which was alleged under N.C.G.S. § 7B-1111(a)(3). At the disposition

 stage, the trial court concluded that termination of respondent-mother’s parental

 rights was in the children’s best interests. Respondent-mother appeals.

 II. Standard of Review

¶ 10 When considering a petition to terminate parental rights, the trial court first

 adjudicates the existence of the alleged grounds for termination. See N.C.G.S. § 7B-

 1109 (2019). “At the adjudicatory stage, the petitioner bears the burden of proving by

 ‘clear, cogent, and convincing evidence’ the existence of one or more grounds for

 termination under section 7B-1111(a) of the General Statutes.” In re A.U.D., 373 N.C.

 3, 5–6 (2019) (quoting N.C.G.S. § 7B-1109(f) (2017)). “If a trial court finds one or more

 grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), it then proceeds

 to the dispositional stage,” id. at 6, at which it “determine[s] whether terminating the

 parent’s rights is in the juvenile’s best interest.” N.C.G.S. § 7B-1110(a) (2019).

¶ 11 This Court reviews a trial court’s adjudication of grounds to terminate parental

 rights “to determine whether the findings are supported by clear, cogent and

 convincing evidence and the findings support the conclusions of law.” In re E.H.P.,
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 372 N.C. 388, 392 (2019) (quoting In re Montgomery, 311 N.C. 101, 111 (1984)).

 “Findings of fact not challenged by respondent are deemed supported by competent

 evidence and are binding on appeal.” In re T.N.H., 372 N.C. 403, 407 (2019) (citing

 Koufman v. Koufman, 330 N.C. 93, 97 (1991)). “The trial court’s conclusions of law

 are reviewable de novo on appeal.” In re C.B.C., 373 N.C. 16, 19 (2019).

 III. Willful Failure to Make Reasonable Progress

¶ 12 Pursuant to N.C.G.S. § 7B-1111(a)(2), termination of parental rights is

 permitted when “[t]he parent has willfully left the juvenile in foster care or placement

 outside the home for more than 12 months without showing to the satisfaction of the

 court that reasonable progress under the circumstances has been made in correcting

 those conditions which led to the removal of the juvenile.” N.C.G.S. § 7B-1111(a)(2).

 According to N.C.G.S. § 7B-904(d1)(3), a trial judge
 has the authority to require the parent of a juvenile who
 has been adjudicated to be abused, neglected, or dependent
 to “[t]ake appropriate steps to remedy conditions in the
 home that led to or contributed to the juvenile’s
 adjudication or to the court’s decision to remove custody of
 the juvenile from the parent, guardian, custodian, or
 caretaker.”

 In re B.O.A., 372 N.C. 372, 381 (2019). “[A] trial court has ample authority to

 determine that a parent’s ‘extremely limited progress’ in correcting the conditions

 leading to removal adequately supports a determination that a parent’s parental

 rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-

 1111(a)(2).” Id. at 385 (quoting In re S.N., 194 N.C. App. 142, 149 (2008)).
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

¶ 13 In this case, the children were removed from respondent-mother’s care and

 adjudicated to be neglected and dependent based upon a series of serious domestic

 violence incidents perpetrated by Mr. D. during 2016. In order to correct the

 underlying causes of these circumstances, the trial court ordered respondent-mother

 to complete domestic violence victim counseling.

 A. Challenged Findings of Fact

¶ 14 Respondent-mother first contends that the trial court erroneously determined

 that the ground of willful failure to make reasonable progress provided a basis for the

 termination of her parental rights because she “made substantial progress on or

 completed all components of her case plan.” She challenges the following findings of

 fact,2 either in whole or in part, which address her progress in rectifying the domestic

 violence issues that she experienced in her relationship with Mr. D.:

 42. Respondent/mother failed to demonstrate the ability to
 protect the juveniles in that she has failed to take the
 necessary steps to remove herself from relationships
 involving domestic violence and she has not demonstrated
 an understanding of the traumatic impact of domestic
 violence in the home of the juveniles.

 ....

 47. Respondent/mother has continued a relationship with
 [Mr. D.] and there have been multiple documented
 incidents of Respondent/mother and [Mr. D.] continuing to

 2 “[W]e limit our review of challenged findings to those that are necessary to support

 the district court’s determination that this ground of respondent-mother’s willful failure to
 make reasonable progress existed in order to terminate her parental rights.” In re A.R.A.,
 373 N.C. 190, 195 (2019).
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

maintain a relationship as well as additional incidents of
domestic violence between them.

....

64. Tony R[.], private investigator, did surveil
Respondent/mother’s home and did observe [Mr. D.]
coming and going from Respondent/mother’s home
multiple times between September 20, 2018 and
September 30, 2018.

....

74. On November 13, 2018, Respondent/mother did attend
a hearing on [DHHS’s] Motion for Review regarding her
visitation with the juveniles. Respondent/mother did
testify under oath that she had contact with [Mr. D.] on
three (3) occasions: July 2017, Christmas 2018 and
September 2018. Respondent/mother did not inform the
Court of having been with [Mr. D.] in November 2017 when
she had a car accident. Respondent/mother did not inform
the Court of [Mr. D.] being at her home on December 17,
2017 when [Mr. D.] did assault her. During her sworn
testimony, Respondent/mother did not inform the Court of
the incident that had occurred October 12, 2018, just one
month prior to the hearing, during which [Mr. D.] did
assault her and cause damage to the vehicle she was
driving.

....

98. The Court did not find on December 10, 2019 that
Respondent/mother is unable to obtain said domestic
violence victim’s treatment due to her lack of funds and the
Court did not order that [DHHS] pay for said treatment.
Respondent/mother did testify and this Court does find
that she has at all times been employed and does not have
difficulty ensuring her bills are paid. Respondent/mother
did have the means and ability to comply with domestic
violence counseling but she was unwilling to make an effort
despite actual knowledge that it was ordered by the Court
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 on July 18, 2017.

 ....

 101. Respondent/mother has willfully failed to participate
 in any further therapy for domestic violence though she
 was specifically ordered to do so by the Honorable Judge
 Pennie M. Thrower on July 18, 2017.

 102. The Court also finds that after Respondent/mother
 completed domestic violence victims’ treatment in early
 2017, she continued to engage in a relationship with [Mr.
 D.] and multiple incidents of domestic violence between
 Respondent/mother and [Mr. D.] did occur. By her pattern
 of behavior, Respondent/mother has failed to demonstrate
 that she has developed the skills required to remove and
 protect herself and the juveniles from exposure to domestic
 violence.

 ....

 104. The Court further finds that Respondent/mother
 continues to minimize the domestic violence that occurred
 between her and [Mr. D.].

 105. The Court further finds that Respondent/mother does
 not fully appreciate or demonstrate concern about the
 negative lifelong impact that witnessing and being a part
 of a toxic domestic violence household has had on the
 juveniles.

 106. The Court further finds that no reasonable progress
 has been made in correcting the conditions, specifically
 domestic violence, that brought the juveniles into [DHHS’s]
 custody.

 1. Finding of Fact 47

¶ 15 Finding of Fact 47, which states that respondent-mother maintained a

 relationship with Mr. D. and that it was marked by multiple new incidents of
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 domestic violence, was supported by several of the trial court’s other findings of fact

 which respondent-mother has not challenged and therefore are binding on appeal.

 For example, the trial court found that: (1) Mr. D. assaulted respondent-mother on

 15 February 2017; (2) Nicole saw Mr. D. in respondent-mother’s home during a visit

 on 29 May 2017; (3) respondent-mother was in an automobile accident on 17

 November 2017 while Mr. D. was a passenger; (4) Mr. D. assaulted respondent-

 mother at her home on 17 December 2017; (5) DHHS was informed in September

 2018 that Mr. D. was living at respondent-mother’s home; (6) respondent-mother was

 again driving with Mr. D. as a passenger on 12 October 2018 when they got into a

 physical and verbal altercation which resulted in Mr. D. punching respondent-mother

 in the face; and (7) Mr. D. attended respondent-mother’s “launch party” in April 2019,

 and the two subsequently visited a museum together. Taken together, these

 unchallenged findings of fact amply support the trial court’s Finding of Fact 47.

 2. Findings of Fact 64 and 74

¶ 16 Findings of Fact 64 and 74 refer to specific additional contacts between

 respondent-mother and Mr. D. Private investigator Tony R. testified that he

 witnessed Mr. D.’s car parked near respondent-mother’s apartment on 20 September

 2018, that he witnessed Mr. D. and respondent-mother return together to respondent-

 mother’s parking lot on 26 September 2018, that he witnessed Mr. D. leaving

 respondent-mother’s parking lot on 28 September 2018, that Mr. D.’s vehicle was
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 back in respondent-mother’s parking lot on the evening of 28 September 2018, and

 that Mr. D.’s car was subsequently in respondent-mother’s parking lot on 30

 September 2018. This testimony from the private investigator fully supports Finding

 of Fact 64.

¶ 17 As to Finding of Fact 74, respondent-mother challenges as impossible the

 portion of the finding which states that respondent-mother testified on 13 November

 2018 that she “had contact” with Mr. D. on Christmas 2018, since the date of 25

 December 2018 had not occurred yet. Respondent-mother is correct that her

 testimony represented that she “invited [Mr. D.] to a Christmas party in December

 2018.” At the termination hearing, respondent-mother testified that the Christmas

 party actually occurred. While this testimony from respondent-mother herself, along

 with logical inferences which can be drawn therefrom, is evidence that could support

 the reference to respondent-mother’s Christmas 2018 meeting with Mr. D., this detail

 in Finding of Fact 74 is unnecessary to support the trial court’s ultimate

 determination that a ground existed which would allow the termination of

 respondent-mother’s parental rights. Accordingly, we shall disregard the portion of

 Finding of Fact 74 that attributes contact between respondent-mother and Mr. D. on

 Christmas 2018 to respondent-mother’s 13 November 2018 testimony.

 3. Findings of Fact 98 and 101

¶ 18 Findings of Fact 98 and 101 address the additional domestic violence therapy
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

that respondent-mother was ordered to undergo after it was determined that she was

still involved with Mr. D. In the 13 October 2017 order referenced in the termination

order,3 the trial court ordered respondent-mother to “attend therapy to assist the

juveniles with healing from the domestic violence they have witnessed and to develop

a better understanding of the impact of domestic violence upon them.” Respondent-

mother submits that this language only requires additional family therapy, rather

than her own individual therapy. Even assuming that respondent-mother’s

resourceful interpretation of the wording in the 13 October 2017 finding of fact is

correct, there was still ample evidence presented at the hearing that respondent-

mother was previously required to engage in additional individual domestic violence

therapy and failed to do so. At the termination of parental rights hearing, a DHHS

social worker specifically stated that the social worker’s team had informed

respondent-mother that the parent “needed to engage in further domestic violence

counseling[.]” Additionally, respondent-mother does not challenge several of the other

findings of the trial court on this issue, including a finding that respondent-mother

had “acknowledged that she had been advised to engage in further domestic violence

victims’ treatment.” This evidence supports the trial court’s determination that

respondent-mother failed to engage in further additional domestic violence therapy

 3 The termination of parental rights order references 18 July 2017—the date the
underlying hearing occurred—but the resulting order was not entered until 13 October 2017.
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 as required.

 4. Findings of Fact 42, 102, 104, 105, and 106

¶ 19 Respondent-mother challenges Findings of Fact 42, 102, 104, 105, and 106 to

 the extent that they show that she failed to make reasonable progress in addressing

 her domestic violence issues stemming from her ongoing relationship with Mr. D. She

 argues that her early completion of domestic violence therapy and her months-long

 separation from Mr. D. after she moved to New York demonstrated that domestic

 violence was no longer an issue that interfered with her ability to care for her

 children.

¶ 20 While there is no dispute that respondent-mother completed a counseling

 program for domestic violence victims in early 2017, her subsequent behavior

 indicates that she failed to modify her behavior sufficiently as a result of the program.

 As previously noted, respondent-mother continued to maintain a relationship with

 Mr. D., despite the fact that he continued to perpetrate domestic violence against her.

 The trial court’s findings reflect that Mr. D. was convicted of the criminal offense of

 simple assault on 17 October 2018 and the criminal offense of assault on a female on

 6 December 2018, based on two separate incidents in which respondent-mother was

 the victim which occurred after she completed the domestic violence counseling.

 Respondent-mother did not report these incidents to DHHS or to the trial court.

 Despite receiving instructions from DHHS to attend additional domestic violence
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 counseling, respondent-mother failed to do so. The trial court specifically found that

 respondent-mother “did have the means and ability to comply with domestic violence

 counseling but she was unwilling to make an effort.”

¶ 21 The record reflects that respondent-mother repeatedly misrepresented the

 status of her relationship with Mr. D. The trial court’s order includes seven

 unchallenged findings detailing respondent-mother’s numerous attempts throughout

 the history of this case to falsely claim that her relationship with Mr. D. had ended.

 The trial court’s findings of fact also reflect that respondent-mother was still

 socializing with Mr. D. as late as April 2019, which was twenty-eight months after

 her children entered DHHS custody and nine months before the termination of

 parental rights hearing.

¶ 22 Respondent-mother’s false statements continued through the termination of

 parental rights hearing itself. The trial court, after evaluating respondent-mother’s

 testimony, assessed her credibility as follows:

 The Court finds that Respondent/mother’s testimony
 during this termination of parental rights hearing was not
 credible in that she was deceptive, manipulative and
 dishonest. The Court finds that Respondent/mother did
 repeatedly attempt to mislead the Court, she did exhibit
 selective memory and she did attempt to minimize and
 explain away her continued relationship with [Mr. D.]. The
 Court did caution Respondent/mother during her
 testimony of the consequences of perjury and contempt of
 court.

 The trial court was pointedly clear that it did not believe respondent-mother’s
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 accounts of the character of the relationship which she shared with Mr. D.

 Respondent-mother’s misrepresentations concerning her affiliation with her abuser,

 even offered in her testimony at the termination of parental rights hearing, provided

 a further foundation for the tribunal’s findings of fact in light of its determination of

 credibility, to which this Court must give deference.

¶ 23 The above-referenced evidence supports the trial court’s determination that

 respondent-mother failed to understand or adequately address the traumatic impact

 of domestic violence on her children. Over the thirty-eight months that her children

 were in the custody of DHHS, respondent-mother failed to make meaningful progress

 to correct the causes of the domestic violence that led to the juveniles’ removal from

 her home.

 B. Adjudication Under N.C.G.S. § 7B-1111(a)(2)

¶ 24 As to the trial court’s adjudication under N.C.G.S. § 7B-1111(a)(2), it properly

 determined pursuant to the evidence presented during the two-day hearing in

 January 2020 that respondent-mother did not make a reasonable effort to correct the

 issues attributable to her relationship with Mr. D. and the prevalence of domestic

 violence that led to the children’s removal from her care. Instead, respondent-mother

 prioritized her relationship with Mr. D. while falsely and repeatedly claiming that

 the relationship had ended. Based upon respondent-mother’s willful failure to make

 reasonable progress in addressing her issues with domestic violence, the trial court
 IN RE L.N.G., L.P.G., AND L.A.D.

 2021-NCSC-29

 Opinion of the Court

 properly concluded that her parental rights were subject to termination under

 N.C.G.S. § 7B-1111(a)(2).

 IV. Conclusion

¶ 25 Based on the foregoing analysis, we conclude that the trial court properly

 determined that respondent-mother’s parental rights could be terminated pursuant

 to N.C.G.S. § 7B-1111(a)(2). Since we have determined that this termination of

 parental rights ground is supported, we need not address respondent-mother’s

 arguments as to the ground of neglect under N.C.G.S. § 7B-1111(a)(1), which is the

 other ground found by the trial court that could substantiate the termination of

 respondent-mother’s parental rights. See In re A.R.A., 373 N.C. 190, 194 (2019) (“[A]

 finding of only one ground is necessary to support a termination of parental

 rights . . . .”). Moreover, respondent-mother does not challenge the trial court’s

 conclusion that termination of her parental rights was in the juveniles’ best interests.

 Consequently, we affirm the trial court’s order terminating respondent-mother’s

 parental rights.

 AFFIRMED.